UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VERNON H. MONDAINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:06CV1660 CDP |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This is an action for judicial review of the Commissioner's decision denying Vernon Mondaine's applications for benefits under the Social Security Act. Mondaine seeks disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq., and supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. Section 205(g) of the Act, 42 U.S.C. §§ 405(g), provides for judicial review of a final decision of the Commissioner under Title II, and Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), provides for judicial review of a final decision under Title XVI.

At his hearing before the Administrative Law Judge (ALJ), Mondaine claimed that he was disabled due to deteriorating left and right hips and depression. Although the ALJ found that Mondaine suffers from avascular

necrosis with osteoarthritis of the hips, he decided that Mondaine was not disabled. Because I find that the decision denying benefits was supported by substantial evidence, I will affirm the decision.

## Procedural History

Mondaine filed his applications for benefits on September 8, 2005. Thompson's applications were denied on December 27, 2005.[1] On July 21, 2006, following a hearing, the ALJ issued a decision that Mondaine was not disabled. The Appeals Council of the Social Security Administration (SSA) denied Mondaine's request for review on October 5, 2006. Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## Evidence Before the Administrative Law Judge

### Testimony

Mondaine was born in 1959 and was 46 years old at the time of his hearing. He alleges that he became disabled on June 30, 2003 due to deteriorating left and right hips and depression. Mondaine testified that he has lived with his fiance for the past twelve years. He has a tenth grade education and did not obtain his GED.

---

[1] Missouri is one of several test states participating in modifications of the disability determination procedures applicable to this case. See 20 C.F.R. §§ 404.906, 404.966, 416.1406, 416.1466 (2001). These modifications include the elimination of the reconsideration step and, in some cases, the Appeals Council review step in the administrative appeals process. See id. Therefore, plaintiff's appeal in this case proceeded directly from the initial denial to the ALJ level.

He has a driver's license but stated that he does not drive often because it hurts his legs. Mondaine last worked in 1999 as a machine operator. That job required him to both sit and to stand and to lift 45 pounds. After dropping a box at work, he received a worker's compensation claim settlement in the amount of $750. Before his job as a machine operator, Mondaine helped his father doing odd jobs.

Mondaine testified that he has osteoarthritis in his hips and that he was told by a doctor that he may need hip replacement surgery. Mondaine said he was nervous about having surgery and that stress caused his face to swell up from rosacea. Mondaine testified that some mornings he cannot bend forward to put on his shoes. He takes Ibuprofen for his pain and rates his pain at a nine on a scale from one to ten if he does not take it. Mondaine told the ALJ that his pain has gotten worse over the years because he is now unable to perform certain activities, like riding a bike, that he used to do. Although Mondaine took Oxycontin for the pain, he stopped taking it because he stated that it made him sick and did not help his pain. Mondaine puts cream on his face for rosacea, but he said that it still hurts and he is self-conscious about his appearance. Other than Ibuprofen, Mondaine takes no other medications for pain.

Mondaine testified that the pain from his hips and stress keep him up at night. He also said that his hips cause pain in his calf muscles. Mondaine testified

that on a bad day he has to stay in bed all day, and that he sometimes falls when getting out of bed in the morning. He testified that he uses a cane daily upon the recommendation from a doctor. Mondaine's fiance sometimes has to help him with bathing and getting dressed. He does no chores around the house. Mondaine testified that he cannot even walk a half-block before he has to sit down because of hip pain. He stated that hip pain also causes him to shift in his chair to try to get into a comfortable position. On a good day. Mondaine watches television, sits inside or in the backyard, and sometimes rides in the car with his fiance to her mother's house.

## **Medical Records**

An x-ray of Mondaine's pelvis dated December 30, 1998 revealed sclerotic and cystic changes involving the left femoral head which could be degenerative in origin or aseptic necrosis. A laboratory report dated January 1, 1999 confirmed Mondaine's hepatitis C antibody was repeatedly reactive. Another lab report of the same date confirmed that Mondaine's rheumatoid factor was out of range at 145H.

An MRI of Mondaine's hip area on March 10, 1999 revealed bilateral femoral head avascular necrosis with early flattening of both femoral heads. Approximately 90 percent of the articular weight-bearing surface is involved on

the right and 100 percent on the left.  A lab report dated October 25, 2005 confirmed reactive hepatitis C antibody.

Doctor Sale performed a consultative examination of Mondaine on December 6, 2005.  He found that Mondaine had a marked decrease in range of motion and tenderness over the hip joints, a slightly waddling gait, and that he was unable to walk on his heels and toes.  Doctor Sale noted that Mondaine had difficulty getting on and off the examination table and that his squatting is done at about 50 degrees with limited knee flexion due to hip pain.  Mondaine's lower extremity muscle strength was noted at 4/5 on the right and 3/5 on the left.  An x-ray taken during the examination confirmed moderately advanced degenerative changes in the left hip with avascular necrosis of the right femoral head with some fragmentation.

An MRI taken of Mondaine's pelvic region on December 9, 2005, revealed avascular necrosis of both femoral heads with collapse of the articular surfaces and secondary osteoarthritis, left greater than right.  Dr. Otto at the Center for Innovative Orthopaedic Surgery wrote "total hip arthroplasty."

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Gowell

v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion.  Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000).  As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or because the court would have decided the case differently.  Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).  In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it."  Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question.

Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates

whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties
> and treating and examining physicians relating to such matters
> as: (1) the objective medical evidence; (2) the subjective
> evidence of the duration, frequency, and intensity of plaintiff's
> pain; (3) any precipitating or aggravating factors; (4) the
> claimant's daily activities; (5) the dosage, effectiveness and
> side effects of any medication; and (6) the claimant's functional
> restrictions.

Id. at 1322.

## **The ALJ's Findings**

The ALJ issued his decision that Mondaine was not disabled on July 21, 2006. In reaching his decision, the ALJ followed the five-step sequential evaluation process, noting at step one that Mondaine had not engaged in substantial gainful activity since June 30, 2003. Proceeding to step two of the analysis, the ALJ found that Mondaine had severe impairments of avascular necrosis with osteoarthritis of the hips. At step three of the evaluation process, the ALJ concluded that Mondaine's condition has not met or medically equaled a listing in Appendix 1, Subpart P, Regulations No. 4.

Proceeding to step four, the ALJ noted that Mondaine was unable to return to his past relevant work "because of the exertional demands." In reaching this conclusion, the ALJ noted that "no doctor who has treated or examined the claimant has rendered a medical opinion that the claimant is unable to perform any

type of work." However, after reviewing the medical evidence the ALJ opined:

> The claimant cannot perform work activity requiring him to be on his feet for the majority of the day. However, the claimant retains the capacity to perform sedentary work, as such work requires sitting through most of the day and standing and walking in combination for only up to two hours out of the eight hour workday. From the evidence, it is concluded that the claimant is precluded from prolonged walking or standing and lifting in excess of ten pounds. Because of the exertional demands, the claimant is unable to return to his past relevant work.

Therefore, the ALJ noted that "the burden shifts to the Commissioner to show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's medically determinable impairments, functional limitations, age, education, and work experience." The ALJ concluded that the transferability of Mondaine's work skills was not material given his age and residual functional capacity and found that "pursuant to Section 404.1569 of Regulations No. 4 and Section 416.969 of Regulations No. 16 and Rules 201.19 and 201.20, Table No. 1, of Appendix 2, Subpart P, Regulations No. 4, in considering his age, education, and work history, with or without transferable skills, with the capacity for sedentary work, the claimant is not disabled."

The ALJ specifically noted that he considered Mondaine's subjective complaints and possible nonexertional limitations in reaching his decision, citing <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984). He discounted Mondaine's

complaints of disabling pain and instead found as follows:

> The claimant is a younger age individual who does not have a good earnings record. Although he alleges he became disabled in June of 2003, the claimant's earnings record shows no earnings whatsoever since 1999. At the hearing the claimant testified that he used a cane prescribed by a physician, but he inconsistently advised Dr. Sale that it was not prescribed by a physician. He has not attempted a sedentary job. He has elected not to work as his fiance supports him and does all the household chores. Although he alleges disabling pain. he takes only over the counter Ibuprofen. He shows no significant adverse side effects from taking his medications. Although he alleges disabling pain, he has not been admitted to a pain clinic. He has not attempted injections. He has not undergone a physical therapy or work hardening program. His level of medical care is inconsistent with the severity of his complaints. While the claimant has some pain, his allegation of disabling pain is not credible. Not all pain reaches a level at which one is unable to work. His pain is precipitated and aggravated by work activity requiring exertion beyond the sedentary level. The evidence fails to show any emotional impairment which has had more than minimal effect upon his ability to perform work related activities for any continuous period of twelve months. The claimant undergoes no treatment for emotional impairment. From the evidence of record, the Administrative Law Judge concludes that the claimant has the residual functional capacity to perform the full range of sedentary work.

For these reasons, the ALJ decided that Mondaine was not disabled.

## **Discussion**

Mondaine alleges that the ALJ's decision is not supported by substantial evidence because he failed to consider Mondaine's subjective complaints of pain

as a nonexertional impairment when determining Mondaine's residual functional capacity.² Mondaine also contends that the ALJ erred by relying on the Guidelines instead of calling a vocational expert to testify. In response, the Commissioner maintains that the ALJ correctly evaluated Mondaine's residual functional capacity and that his decision is supported by substantial evidence.

I find that substantial evidence supports the ALJ's decision, upon which he arrived following a proper legal analysis. Under the standards set out in Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000), and Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001), residual functional capacity "is the most [a person] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545, 416.945. This determination turns on "all of the relevant medical and other evidence," including statements from the claimant. Id. This evidence includes: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of his or her pain or other

---

²The ALJ also considered and rejected Mondaine's allegations of emotional impairment. Mondaine does not challenge this finding on appeal to this Court.

symptoms; (6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Polaski, 739 F.2d at 1321-22; 20 C.F.R. §§ 404.1529, 416.929.

The ALJ adequately considered the entire record in his determination that Mondaine had the residual functional capacity to perform a full range of sedentary work and was precluded only from prolonged walking or standing and lifting in excess of 10 pounds. The ALJ then correctly applied the Guidelines, which directed a finding that Mondaine was not disabled.

In rejecting Mondaine's claim of disabling pain, the ALJ reviewed the record, including Mondaine's testimony, and determined that "while the claimant has some pain, his allegation of disabling pain is not credible. Not all pain reaches a level where one is unable to work. Mondaine's pain is precipitated and aggravated by work activity requiring exertion beyond the sedentary level." To support his finding that Mondaine's allegations of severe, disabling pain were not fully credible, the ALJ noted that: Mondaine's only pain medication was over-the-counter Ibuprofen; Mondaine had never been admitted to a pain clinic, undergone any physical therapy, or attempted any more aggressive pain treatments such as injections or nerve blocks; and he had never participated in a work-hardening

program. In discounting Mondaine's complaints, the ALJ properly considered evidence that he had not made efforts to seek medical treatment to alleviate his alleged pain and that he was not taking any prescription medicine intended to treat such pain. See Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001).

In his credibility analysis, the ALJ also noted that Mondaine made inconsistent statements about his need for a cane. Although Mondaine testified before the ALJ that he was using a cane upon the recommendation of a doctor, he told Dr. Sale that he was not prescribed a cane. An ALJ may properly "discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole." Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000); see also Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (ALJ properly discounted claimant's subjective complaints of pain, in part because claimant alleged that she needed a cane but had no medical records demonstrating cane was medically necessary).

The ALJ also relied upon the fact that Mondaine had not worked since 1999 and had a history of very low earnings. Mondaine had a number of years with no reported earnings and many more with earnings well below the substantial gainful activity level. "A lack of work history may indicate a lack of motivation to work rather than a lack of ability," Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir.

2001), and for this reason the ALJ properly considered Mondaine's work history in his analysis of Mondaine's credibility. See Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993) (claimant's credibility is lessened by a poor work history). The ALJ also considered the evidence that no doctor has ever said that Mondaine is unable to work, which is an appropriate factor in his analysis. Raney, 396 F.3d at 1011 (ALJ properly relied on complete absence of any doctor's opinion that claimant was disabled). Based on these factors, the ALJ correctly determined that Mondaine's subjective complaints of pain were not fully credible. Credibility determinations, when adequately explained and supported, are for the ALJ to make. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Because the ALJ gave his reasons for not fully crediting Mondaine's subjective complaints of pain, which were supported by the record, I will defer to his judgment. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir 2001).

Because the ALJ properly determined that Mondaine's complaints of pain were not fully credible, he was not required to incorporate pain as a nonexertional limitation in his residual functional capacity determination. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) (the ALJ "properly limited his RFC determination to only the impairments and limitations he found credible based on his evaluation of the entire record."). Moreover, the ALJ actually accounted for

Mondaine's complaints of pain, to the degree they were credible, by limiting him to sedentary work.³ In doing so, the ALJ precluded Mondaine from performing activities like prolonged standing or walking that caused pain. The ALJ's residual functional capacity determination was supported by the other evidence in the record, including Mondaine's own testimony about his daily activities, which included extended periods of sitting. To the extent that Mondaine testified that he sometimes spent the entire day in bed, the ALJ properly discounted this testimony as not fully credible in light of the lack of medical treatment sought and obtained by Mondaine, his work history, and the other factors discussed above. Contrary to Mondaine's assertions, the ALJ may use the Guidelines instead of expert vocational testimony if the nonexertional impairment does not diminish the claimant's residual functional capacity to perform a full range of the activities listed in the Guidelines. Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997). Because the record supports a finding that Mondaine's pain does not diminish his ability to perform a full range of sedentary work, the ALJ properly applied the Guidelines instead of relying upon vocational expert testimony to find Mondaine not disabled. See McGeorge, 321 F.3d at 768-69 ("In other words, the law of this

---

³The ALJ found that "Mondaine's pain is precipitated and aggravated by work activity requiring exertion beyond the sedentary level."

circuit states that an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines.") (internal citations and quotation marks omitted).

Because substantial evidence in the record as a whole supports the ALJ's determination that Mondaine is not disabled, I will uphold his decision to deny benefits.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate judgment in accord with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of March, 2008.